**Patty Ann HUNTER, Appellant,**

v.

**ST. LOUIS–SAN FRANCISCO RAIL-WAY COMPANY, Appellee.**

No. 80–1260.

United States Court of Appeals, Eighth Circuit.

Submitted Oct. 15, 1980.

Decided Jan. 28, 1981.

John M. Bilheimer, Little Rock, Ark., for appellant.

Dennis T. Rathmann, St. Louis, Mo., for appellee.

Before LAY, Chief Judge, and BRIGHT and McMILLIAN, Circuit Judges.

LAY, Chief Judge.

Patty Ann Hunter appeals from a judgment rendered against her in a suit brought under title VII of the Civil Rights Act of 1964, §§ 701–718, 42 U.S.C. §§ 2000e to 2000e–17, wherein she alleged sex discrimination by the Fort Smith office of the St. Louis-San Francisco Railway Company in July 1974. The district court, the Honorable Paul X Williams presiding, held that the Railway had articulated a legitimate nondiscriminatory reason for not hiring Hunter as a fireman and that Hunter failed to prove that this reason was a pretext for sex discrimination. The district court found the Railway's nondiscriminatory reason was that it hired two black male applicants for the firemen vacancies pursuant to its affirmative action plan. These hiring decisions were made at the insistence of the United States Post Office, the agency responsible for monitoring the Railway's compliance with Executive Order No. 11246, 30 Fed.Reg. 12319, as amended by Executive Order No. 11375, 32 Fed.Reg. 14303.[1]

On appeal Hunter asserts that the district court erred in failing to find that the Railway's admitted preference for the black applicants violated title VII since such preference intentionally discriminated against her as a white female. She urges that since she is a member of a "protected minority" by virtue of her sex, she deserved the same preferred status as a black applicant. She asserts that the Railway violated title VII by preferring one minority group over another. She argues that, under the circumstances, the Railway should have selected employees from among minority applicants only on the basis of work-related qualifications, which the Railway failed to do. Although the principles of *McDonald v. Santa Fe Trail Transportation Co.*, 427 U.S. 273, 96 S.Ct. 2574, 49 L.Ed.2d 493 (1976), and *United Steelworkers of America v. Weber*, 443 U.S. 193, 99 S.Ct. 2721, 61 L.Ed.2d 480 (1979), are easily reconciled, the precise problem posed by Hunter has not been previously addressed. In this case, however, we need not explore the intriguing problem of whether title VII requires that affirmative action programs provide for different minority groups on an equal or proportional hiring basis.[2]

Although the legislative history of the 1972 amendments to title VII lends support to the proposition that sex discrimination is to receive the same treatment under title VII as race discrimination,[3] the thrust of the Civil Rights Act is to prohibit discrimination against minorities, not to accord preference to them. *McDonald* teaches that employers cannot treat white and black employees disparately for similar conduct. In *McDonald*, the majority states:

> [W]e described the Act in *Griggs v. Duke Power Co.*, 401 U.S. 424, 431 [91 S.Ct. 849, 853, 28 L.Ed.2d 158] (1971), as prohibiting "[d]iscriminatory preference for *any* [racial] group, *minority or majority*" (emphasis added). Similarly the EEOC, whose interpretations are entitled to great deference, *id.*, at 433–434, [91 S.Ct. at 854–855], has consistently interpreted Title VII to proscribe racial discrimina-

1. Exec. Order 11246 of Sept. 24, 1965, 30 Fed. Reg. 12319, as amended by Exec. Order No. 11375 of Oct. 13, 1967, 32 Fed.Reg. 14303, *reprinted in* 42 U.S.C. § 2000e note.

2. There is considerable merit to the Railway's argument that an employer should not be placed in a catch-22 situation, where it would be subject to charges of discrimination (1) by whites if the employer instituted a race-conscious affirmative action program, (2) by blacks (and loss of government contracts) if it failed to implement such a program, and (3) by other minorities if in implementing the affirmative action program the employer did not provide equally for all historically disadvantaged groups. *See generally* Boyd, *Affirmative Action In Employment—The Weber Decision*, 66 Iowa L.Rev. 1, 57 (1980).

3. H.R.Rep.No. 238, 92d Cong., 2d Sess. 2, *reprinted in* [1972] U.S.Code Cong. & Ad.News, pp. 2137, 2140–41. *See also Frontiero v. Richardson*, 411 U.S. 677, 686–88, 93 S.Ct. 1764, 1770–1771, 36 L.Ed.2d 583 (1973).

tion in private employment against whites on the same terms as racial discrimination against nonwhites. . . .

427 U.S. at 279, 96 S.Ct. at 2578 (footnote omitted).

*Weber* provides that it is permissible under an affirmative action plan to prefer minority job applicants in order to remedy past discriminatory practices. 443 U.S. at 209, 99 S.Ct. at 2730.

■ The issue here must be decided in terms of whether the Railway discriminated against Hunter rather than whether affirmative action plans must accord equal preference to different minority groups. In contrast to the disparate impact cases where the employer uses some neutral employment practice (*see Griggs v. Duke Power Co.*, 401 U.S. 424, 91 S.Ct. 849, 28 L.Ed.2d 158 (1971)), the present case is one which falls under the flexible standards governing disparate treatment cases enunciated in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973).[4] As such, plaintiff has the burden of proving intentional discrimination under title VII. Assuming plaintiff has made a prima facie case under *McDonnell Douglas*, the employer may avoid liability by articulating a legitimate nondiscriminatory reason for the disparate treatment. *Board of Trustees v. Sweeney*, 439 U.S. 24, 99 S.Ct. 295, 58 L.Ed.2d 216 (1978). Once such a reason is articulated, the plaintiff must be given the opportunity to show that the proffered justification is merely a pretext for discrimination. *Furnco Construction Co. v. Waters*, 438 U.S. 567, 577–78, 98 S.Ct. 2943, 2949–2950, 57 L.Ed.2d 957 (1978); *Kirby v. Colony Furniture Co.*, 613 F.2d 696, 702–03 (8th Cir. 1980).

■ Hunter argues that the Railway's affirmative action plan is not a "legitimate reason" for her rejection because the plan is less comprehensive and specific as to its goals than the plan which was upheld in *Weber*. The district court found that the Railway's plan was a permissible plan, but did not discuss the reasons for this finding. The standard of review of judicial findings and the Supreme Court's manifest concern in *Weber* for "traditional management prerogatives" and federal government encouragement of private, voluntary, affirmative action, 443 U.S. at 207, 99 S.Ct. at 2729, favor affirming the district court on this point. The plan, motivated by pressure from the Post Office, was a bona fide attempt to hire blacks for an occupation which had traditionally been closed to them. The plan did not absolutely bar the advancement of white employees, require their discharge, or otherwise unnecessarily trammel their interests. *Id.* at 208–09, 99 S.Ct. at 2730–2731.

Hunter also urges that the Railway's affirmative action plan is not a "nondiscriminatory reason" within the meaning of *Sweeney, Furnco,* and *McDonnell Douglas.* Hunter recognizes that the Railway's plan is not racially discriminatory within the meaning of title VII after *Weber*, but she argues that the implementation of the plan is discriminatory against women, specifically white women. Hunter asserts that because white women are rejected under the Railway's plan, the plan is not a "nondiscriminatory reason" for her rejection. Hunter misperceives the Railway's burden. Under *Sweeney, Furnco,* and *McDonnell Douglas*, the employer's burden in a sex discrimination case is to articulate a gender neutral criterion, permissible under title VII, that explains the employer's action. Race is a gender neutral employment criterion because it affects men and women equally; it is permissible under title VII as interpreted in *Weber*, and it explains Hunter's rejection. By articulating race as the reason for Hunter's rejection, the Railway stated a nondiscriminatory reason under title VII for its action.

---

**4.** The test for a prima facie case under *McDonnell* is fourfold; a plaintiff establishes an inference of intentional discrimination by showing:

  (i) that he belongs to a protected minority;
  (ii) that he applied and was qualified for a job for which the employer was seeking applicants; (iii) that, despite his qualifications, he was rejected; and (iv) that, after his rejection, the position remained open and the employer continued to seek applicants from persons of complainant's qualifications.

411 U.S. at 802, 93 S.Ct. at 1824.

The Railway's rejection of the plaintiff's application was based on its attempt to implement an affirmative action plan to hire black engineers. Hunter had the opportunity to introduce evidence that the proffered justification was merely a pretext for sex discrimination. *Furnco*, 438 U.S. at 578, 98 S.Ct. at 2950; *McDonnell Douglas*, 411 U.S. at 804–05, 93 S.Ct. at 1825–1826; *Kirby v. Colony Furniture Co.*, 613 F.2d at 703. However, she makes no argument on appeal that the Railway's plan was a pretext masking intentional sex discrimination. In applying the clearly erroneous standard we cannot set aside the district court's findings unless we are fairly convinced that a mistake has been made. On the basis of the argument and record made we cannot do so.

Judgment affirmed.