Catherine McFADDEN, Plaintiff,

v.

KSD/KSD–TV, INC., Defendant.

No. 78–502C(2).

United States District Court,
E. D. Missouri, E. D.

March 9, 1981.

Mark E. Goodman, Gross & Goodman, St. Louis, Mo., for plaintiff.

John J. Gazzoli, Jr., Lewis, Rice, Tucker, Allen & Chubb, St. Louis, Mo., for defendant.

## MEMORANDUM

NANGLE, District Judge.

This case is now before the Court for decision upon the merits. Plaintiff brought this suit pursuant to Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e et seq., claiming that defendant's decision not to hire her was due to her sex. She seeks a declaratory judgment to that effect, together with back pay, attorneys' fees, and costs.

This case was tried before the Court sitting without a jury. This Court, having considered the pleadings, the testimony of the witnesses, and the depositions and exhibits in evidence, and being fully advised

in the premises, hereby makes the following Findings of Fact and Conclusions of Law, as required by Rule 52, Federal Rules of Civil Procedure.

## FINDINGS OF FACT

Plaintiff is a white female and is presently employed as a broadcast technician by CBS, Inc. in New York, New York. At the times pertinent hereto, she resided in St. Louis, Missouri. Defendant KSD/KSD–TV, Inc., at the times pertinent hereto, owned and operated a radio station and a television station in the St. Louis metropolitan area. Defendant employed more than twenty-five persons at these times, and was an employer within the meaning of 42 U.S.C. § 2000e(b).

In February, 1975, plaintiff submitted an application for full-time employment to defendant. She sought a position as a broadcast engineer. Plaintiff had been interested in this area for the past few years, and had gained some experience in the field. She was a member of Local 4 of the International Brotherhood of Electrical Workers ("IBEW"), the collective bargaining agent for defendant's broadcast engineers.

Plaintiff had attended Elkins Institute, a technical school, in 1973 in order to obtain a first-class broadcast license. Though such a license was not necessarily an indication of the holder's qualifications for the position of broadcast engineer, the collective bargaining agreement between defendant and IBEW required that all broadcast engineers hired by defendant either have such a license or obtain one within one year of hiring. Defendant did not consider the holding of such a license significant.

Plaintiff had previously been employed for approximately one year at KETC–TV, a local educational television station. Her duties at the station included the performance of various technical tasks similar to that done by defendant's engineers, and involved work with equipment similar to that used at defendant's stations. Plaintiff also worked at KDNL–TV for approximately sixty days in early 1975. Her employment at this station was terminated due to inadequate job performance. There is no indication that defendant was aware of this termination at the times it was considering hiring plaintiff.

The agreement between IBEW and local radio and television stations provided for the temporary employment of "extra board" employees. Such employees were hired through the union to replace workers who were temporarily absent, due to illness, vacation or other such reasons. To be eligible for such employment, the prospective employee had to have been familiar with the stations' equipment. To this end, prospective employees were allowed to train on the stations' equipment. Such employees would observe the stations' personnel operate the equipment and would occasionally be allowed to run the equipment themselves. They were not paid in such training sessions.

Plaintiff had previously trained at several radio stations in the St. Louis area, including KSD. Plaintiff was first brought to KSD by her father, who was a broadcast engineer there. At the time plaintiff filed her application for full-time employment with defendant, she was qualified to perform work on the "extra board," though she had not yet done so at defendant's stations. She had performed such work at other local stations. This Court must also conclude, though the evidence is less clear on this point, that she was qualified for full-time employment with defendant. Though she may have been slightly inexperienced at this time, she was no more so than most other new employees, and could have met the demands of the job with the normal assistance afforded newcomers.

In May or June, 1975, an opening occurred at defendant for a full-time broadcast engineer. A white male, Frank Accarino, who had worked at KSD for approximately six months off the extra board, was hired. Plaintiff makes no claim that she was discriminated against in the decision to hire Accarino.

Plaintiff was interviewed at this time by J. E. Risk, defendant's Chief Engineer and

the person in charge of hiring. Risk had seen plaintiff at the station previously while she was training, and was familiar with her and her work. Plaintiff had concentrated her training in the radio field, in which she was more interested. Risk expressed concern about this and advised her to become familiar with the television side of the business, since engineers were normally required to work on both types of equipment. Plaintiff did not heed this suggestion.

A second full-time position opened up in the summer of 1975, and plaintiff was so advised by her father. This position involved primarily work in the television field. Plaintiff asked to be interviewed again by Risk. Risk felt a second interview was unnecessary since he had just interviewed her a few months earlier.

Following customary procedure, Risk made inquiries with acquaintances in the industry and at local schools about possible candidates for the open position. A professor at Southern Illinois University at Carbondale highly recommended Mr. Eugene Stamps, who was to shortly receive his bachelor's degree in electronics. Stamps had an excellent academic and work record. He has worked extensively with the university television station. He also had previous engineering experience in the military and at a Chicago radio station. Stamps did not possess a first-class broadcast license at this time, but he expressed a willingness to obtain one and, in fact, did obtain such a license within one year of his hire by defendant, as specified in the collective bargaining agreement. Another positive factor with respect to Stamps was the fact that he was black. Defendant was actively attempting to find qualified minority employees.

Stamps came to St. Louis for an interview at the station. He was impressive in the interview and the decision was made at that time to hire him.

Plaintiff was among seventy or so other persons who had applications on file with defendant at the time. Of this number, only a few were female, and plaintiff was the only female in the area actively seeking employment as a broadcast engineer at that time. Defendant had not previously employed any females in the position of broadcast engineer.

Risk honestly believed that Stamps was the most qualified person for the job. He also believed that plaintiff needed more experience before she was ready for full-time employment as a broadcast engineer.

Stamps undoubtedly was qualified for the position. Though plaintiff was also qualified, this Court can not say that she was clearly more so than Stamps, or if, in fact, she was even as qualified. Risk's decision to hire Stamps was based solely on his determination that Stamps was the most qualified applicant for the position. The decision not to hire plaintiff was not based in any way on her sex.

## CONCLUSIONS OF LAW

This Court has jurisdiction of this case pursuant to 42 U.S.C. § 2000e et seq.

■ In this Title VII case, plaintiff has the initial burden of proving a prima facie case. In the context of this case, this burden is met by showing that she is a member of the protected class, that she was qualified for the position she sought, that she was not hired for the position, and that defendant continued to seek applicants of plaintiff's qualifications. *McDonnell Douglas v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). Only one of these elements, plaintiff's qualifications, was contested in this case. This Court has found that plaintiff was qualified for the position she sought. She has therefore established a prima facie case.

■ Once plaintiff has established a prima facie case, defendant must articulate a legitimate, non-discriminatory justification for the decision not to hire her in order to rebut this prima facie case. *McDonnell Douglas, id.; Furnco Construction Corp. v. Waters,* 438 U.S. 567, 98 S.Ct. 2943, 57 L.Ed.2d 957 (1978). Defendant need not, as plaintiff suggests, prove the absence of a discriminatory motive. *Board of Trustees*

*v. Sweeney*, 439 U.S. 24, 99 S.Ct. 295, 58 L.Ed.2d 216 (1978); *Kirby v. Colony Furniture Co., Inc.*, 613 F.2d 696 (8th Cir. 1980). Defendant has met its "burden of production of evidence," *Kirby, id.* at 702, by showing that the decision to hire Stamps was based on the determination that he was the most qualified applicant for the position.

The burden is now upon plaintiff to prove that this reason is, in fact, a pretext for discrimination. *Furnco*, supra; *McDonnell Douglas*, supra. The burden is on plaintiff to prove by a preponderance of the evidence that the challenged employment practice was discriminatory. *Kirby*, supra at 703.

█ It is important to keep in mind that defendant need not prove, and this Court need not decide in order to find in favor of defendant, that Stamps was, in fact, more qualified than plaintiff. *Texas Department of Community Affairs v. Burdine*, —— U.S. ——, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981). Rather, defendant has met its burden by articulating a legitimate, non-discriminatory reason for not hiring plaintiff—it has shown that, in defendant's opinion, Stamps was more qualified than plaintiff. *Id.* Of course, were plaintiff obviously the more qualified of the two, this evidence would be cogent proof that the articulated reason was, in fact, a pretext for discrimination. Likewise, it would also tend to show the articulated reason to be a pretext if, as between two similarly qualified applicants of opposite sexes, defendant consistently hired the male applicant.

There is no such proof in this case, however. Each applicant had strong points and weak points. This Court can not say that defendant's evaluation of their relative strengths and weaknesses was erroneous. Similarly, though defendant had not previously hired any female broadcast engineers, the evidence showed that very few such applicants were in the market.

Plaintiff has therefore failed to prove that defendant's articulated reason for hiring Stamps was a pretext for discrimination. Judgment will be entered in defendant's favor.