Larry **TAYLOR**, Plaintiff,

v.

**AMATURO GROUP, INC., etc.,**
**Defendant.**

**No. 80–671C(2).**

United States District Court,
E. D. Missouri, E. D.

Aug. 7, 1981.

Bernard F. Edwards, Jr., St. Louis, Mo., for plaintiff.

Michael E. Kaemmerer, Chesterfield, Mo., for defendant.

## MEMORANDUM

NANGLE, District Judge.

Plaintiff Larry Taylor brought this action pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq., and 42 U.S.C. § 1981. He alleges that defendant discharged him and subjected him to disparate conditions of employment because of his race. In addition, plaintiff claims that defendant's discriminatory actions were motivated by a desire to retaliate against plaintiff, who had previously filed charges of racial discrimination with the Equal Employment Opportunity Commission ("E.E.O.C.").

This case was tried to the Court sitting without a jury. The Court having considered the pleadings, the testimony of the witnesses, the documents in evidence and the stipulations of the parties, and being fully advised in the premises, hereby makes the following findings of fact and conclusions of law, as required by Rule 52, Federal Rules of Civil Procedure.

## FINDINGS OF FACT

1. Plaintiff, Larry Taylor, is a black male and a resident of the State of Missouri.

2. Defendant, Amaturo Group, Inc., is a corporation engaged in an industry affecting commerce. It is an employer within the meaning of 42 U.S.C. § 2000e(b).

3. Plaintiff filed discrimination charges with the Equal Employment Opportunity Commission ("E.E.O.C.") within ninety days of his discharge, and brought this lawsuit within ninety days of receipt of his Right-to-Sue letter from the E.E.O.C.

4. Plaintiff was first employed by KKSS, a radio station operated by defendant in St. Louis, in May 1975 as an advertisement salesman. Plaintiff had prior sales experience before he came to KKSS.

5. The terms of employment at KKSS allowed plaintiff to receive 15% of all the sales he collected within a given month. In addition, the station guaranteed plaintiff a minimum of $1,000.00 a month. After an employee leaves the station, he receives a commission on the collections made within ninety days.

6. Mr. Alan Eisenburg, the vice president and general manager of KKSS from April 1975 to May 1978, hired plaintiff. Traditionally, the vice president of the radio station is in complete control of the management and day to day operations of KKSS. He makes all the hiring and firing decisions with little or no supervision from Mr. Joseph Amaturo, who is president of defendant, and is located in Ft. Lauderdale, Florida.

7. There were no complaints about plaintiff's performance during Mr. Alan Eisenburg's tenure at KKSS. Mr. Cliff Mantle, the sales manager, credited plaintiff with being a good employee and salesman during this period of time. The sales manager was not knowledgeable about plaintiff's performance after Mr. Eisenburg left the radio station.

8. Mr. Barry Baker replaced Mr. Alan Eisenburg as vice president and general manager of KKSS in May 1979. Previous to Mr. Baker's arrival, KKSS was not a profitable radio station. As a result, Mr. Amaturo transferred Mr. Baker to St. Louis in an effort to turn the station around. Mr. Baker had been very successful in his previous efforts in Houston to improve the ratings of an unprofitable radio station. By instituting a system of sales planners, call reports, hit lists, and daily sales meetings the Houston station achieved a number one rating. Mr. Baker instituted an identical system at KKSS. As a result, KKSS ratings greatly improved.

9. Among the changes instituted by Mr. Baker, was the decision to take away regional accounts from the KKSS salesmen. As a result, the salesmen were limited to collecting from their local accounts. Mr. Baker instituted this policy stationwide. The effect on plaintiff's accounts was no more severe than on the accounts of the other salesmen. In fact, there was at least one other salesman who had more regional accounts than the plaintiff, and these were all taken away.

10. One of the byproducts of the changes instituted by Mr. Baker was a large turnover in the KKSS staff. The new staff has a significantly greater percentage of blacks. In fact KKSS filled the vacancy left by plaintiff's discharge with a black employee.

11. Complaints about plaintiff's performance began after Mr. Baker instituted these new sales policies. Plaintiff failed to turn in lists of top sales targets, to call the office regularly, or to submit sales planners and call reports consistently. Plaintiff was placed on probation on July 16, 1979 and eventually discharged on September 28, 1979.

12. The event that precipitated plaintiff's discharge was the submission of duplicate sales planners by plaintiff. Rather than turning in the actual list of customers that he expected to call upon in the next week plaintiff merely xeroxed and submitted to Mr. Baker copies of old sales planners. Mr. Baker viewed this action on the part of the plaintiff as an explicit disregard of the new sales policies and in light of plaintiff's probationary status discharged him.

13. Plaintiff was not treated differently than similarly situated employees at KKSS. Mr. Baker disciplined other employees who failed to follow the new sales techniques. Mr. Switzer, also a salesman at KKSS received oral and written warnings when he failed to turn in his call reports and sales planners. However, Mr. Switzer was not guilty of copying old planners or failing to turn in hit lists, as was the plaintiff. Mr. Switzer worked at KKSS from February 1979 to May 1980.

14. Just as defendant did not impose harsher discipline on plaintiff for his failure to follow newly imposed sales techniques, defendant did not favor other similarly situated employees in the distribution of benefits. After Mr. Mantle, the sales manager, left KKSS, plaintiff received one of his biggest accounts.

15. Defendant had warned plaintiff about his failure to comply with company sales policies well before plaintiff filed a complaint with the E.E.O.C. on July 25, 1979. In fact, defendant placed plaintiff on probation on July 16, 1979 which was a month before the E.E.O.C. notified defendant of the charges brought against it by the plaintiff.

16. Mr. Eisenburg testified that it was the policy of defendant to fire employees that filed complaints with the E.E.O.C. This was to be accomplished by inserting a memo into the file of any employee, who had instituted proceedings, each time a minor disciplinary occurrence took place. According to Mr. Eisenburg, in this way the company could build a record against the employee and successfully discharge anyone who complained to the E.E.O.C. or F.C.C. In light of Mr. Eisenburg's strained relationship with KKSS, and his discharge by defendant in 1978, this Court can not perceive of Mr. Eisenburg as a disinterested witness. This Court does not accept his testimony.

17. Plaintiff was not discriminated against in terms and conditions of employment. Nor was his discharge precipitated by the filing of an E.E.O.C. complaint.

## CONCLUSIONS OF LAW

This Court has jurisdiction of this case pursuant to 28 U.S.C. § 1343 and 42 U.S.C. § 2000e–5(f)(3). Plaintiff has three distinct complaints. First he claims that defendant treated him differently than other similarly situated employees who were not members of the protected class; second plaintiff alleges that defendant discharged him because of his race; finally, plaintiff argues

that his discharge was precipitated by the filing of a complaint of discrimination with the E.E.O.C.

The Eighth Circuit has recently held that the requirements for recovery in a 42 U.S.C. § 1981 action are identical to the requirements for recovery in a Title VII cause of action. The allocation of the burden of proof is the same in both causes of action. *Kenyatta v. Bookey Packing Co.*, 649 F.2d 552 (8th Cir. 1981); *Person v. J. S. Alberici Construction Company, Inc.*, 640 F.2d 916 (8th Cir. 1981).

In a Title VII cause of action the plaintiff has the initial burden of proving by a preponderance of the evidence a prima facie case of discrimination. If the plaintiff is successful, the defendant must then articulate a legitimate nondiscriminatory reason for his actions. The burden of producing evidence then shifts back to the plaintiff who must show by a preponderance of the evidence, that the defendant's explanation was merely a pretext for discrimination. *Texas Department of Community Affairs v. Burdine*, 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981); *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973); *Kirby v. Colony Furniture Company, Inc.*, 613 F.2d 696 (8th Cir. 1980).

The elements of a prima facie case in a Title VII cause of action vary according to the particular claim that a plaintiff asserts. *Green*, supra. Plaintiff first argues that defendant employer subjected him to disparate treatment. In order to establish a prima facie case for this claim plaintiff must show by a preponderance of the evidence that he belonged to the protected class, that defendant treated him differently than other similarly situated employees who were not members of the protected class, and finally that defendant subjected him to adverse employment decisions because of his race. *Kirby*, supra; *Mosley v. General Motors Corporation*, 508 F.Supp. 171 (E.D.Mo.1980). While the plaintiff is clearly a member of the protected class, he has failed to show by a preponderance of the evidence that the defendant treated him dissimilarly or that defendant's employment decisions were motivated by a discriminatory intent. See Findings of Fact Nos. 13–14. When a plaintiff fails in his initial attempt to prove a prima facie case, the court need inquire no further and defendant need not articulate any reasons for its actions. Therefore plaintiff's claim of dissimilar treatment under 42 U.S.C. § 2000e and 42 U.S.C. § 1981 fails. *Henry v. Ford Motor Co.*, 553 F.2d 46 (8th Cir. 1977).

Plaintiff next argues that the defendant discharged him due to his race in violation of Title VII and 42 U.S.C. § 1981. In order to establish a prima facie case for an unlawful discharge plaintiff must establish three distinct elements: first, he belongs to the protected class; second, he was qualified for his job and performing it satisfactorily; and finally, that the defendant discharged him. *McDonnell*, supra. In this instance plaintiff has established successfully an inference of discriminatory intent as there was testimony to the effect that plaintiff's job performance was at one time considered satisfactory. It is also clear that defendant discharged plaintiff and that plaintiff is a member of the protected class. See Findings of Fact No. 7. Nonetheless, defendant successfully rebutted the presumption of unlawful discrimination by articulating a legitimate nondiscriminatory reason for its discharge of the plaintiff, *Burdine*, supra. This Court does not believe that plaintiff's failure to follow the new sales procedures, instituted by Mr. Baker, was merely a pretext for his termination. Plaintiff's failure to turn in lists of sales target, to call the office regularly or to submit sales planners on time certainly would interfere with an effort to make KKSS a profitable radio station. Finally, this Court believes that defendant justifiably terminated plaintiff after he turned in a duplicate list of customers rather than the actual list of customers he planned to visit in the next week. See Findings of Fact Nos. 11–12. Viewing the record as a whole, this Court believes that defendant discharged plaintiff for the nondiscriminatory

reasons articulated and, therefore, plaintiff's race was not a factor in his discharge.

 Plaintiff finally alleges that his discharge by defendant was precipitated by his filing of a complaint of discrimination with the E.E.O.C. Retaliation suits require plaintiffs to establish a prima facie case that consists of three distinct elements: one, plaintiff belongs to the protected class; two, plaintiff filed a complaint of discrimination; and finally that there was a causal connection between defendant-employer's adverse treatment of plaintiff and the filing of charges with the E.E.O.C. *Grant v. Bethlehem Steel Corp.*, 622 F.2d 43 (2nd Cir. 1980); *Windom v. City of St. Louis*, 427 F.Supp. 806 (E.D.Mo.1977) *aff'd.* 568 F.2d 78 (8th Cir. 1977). Plaintiff has presented sufficient evidence to establish an inference of discriminatory intent. Defendant discharged plaintiff after receiving notification of charges of discrimination with the E.E.O.C. Also plaintiff presented evidence showing that other employees filed complaints against defendant with the E.E.O.C. However, defendant has successfully rebutted the presumption of retaliatory motive by articulating a legitimate nondiscriminatory reason for any adverse employment decision taken against plaintiff. Defendant established that plaintiff has a long record of refusing to follow the new sales procedures instituted at KKSS. Defendant placed plaintiff on probation and gave him several oral warnings long before the receipt of notice of charges of discrimination with the E.E.O.C. See Findings of Fact Nos. 11–12, 15. Finally this Court concludes that the discharge of the plaintiff was a result of his failing to turn in the list of customers required by company policy rather than the filing of charges of discrimination. Therefore, plaintiff has failed to establish by a preponderance of the evidence that the legitimate reasons offered by defendant for adverse actions taken against plaintiff were a pretext for retaliation in discrimination.

 Judgment will therefore be entered for defendant. This Court can not characterize plaintiff's claims as totally without

foundation. Therefore, defendant's request for attorneys' fees will be denied. *Christiansburg Garment Co. v. EEOC*, 434 U.S. 412, 98 S.Ct. 694, 54 L.Ed.2d 648 (1978).