Thomas J. JOHNSON, Plaintiff,

v.

ARMCO INCORPORATED.

Civ. A. No. J–80–2457.

United States District Court,
D. Maryland.

Oct. 1, 1982.

Charles P. Howard, Jr., Baltimore, Md., for plaintiff.

Daniel M. Twomey, Baltimore, Md., Daniel A. Masur, Washington, D. C., for defendant.

## MEMORANDUM AND ORDER

SHIRLEY B. JONES, District Judge.

This is an action for employment discrimination brought under Title VII, 42 U.S.C. § 2000e, *et seq.* Plaintiff, Thomas J. Johnson, alleges that he was discriminated against on the basis of race in being denied a promotion to the position of crane operator by defendant, Armco, Incorporated.[1] The case was tried to this Court on February 9, 10, 11, and March 1 and 2, 1982, and post-trial memoranda were filed by the parties. This memorandum opinion constitutes the Court's findings of fact and conclusions of law.

### Facts

Plaintiff is a black male who was hired by Armco on August 12, 1973. The evidence showed that after working twelve to fourteen months in Armco's metal shop, plaintiff transferred to the Masonry Department, where he remained for at least two years. He testified that while working in that department, he operated a crane, from time to time, for a period of at least one year. In 1975 or 1976, Johnson was assigned to the Labor Department,[2] where he remained until June of 1979. Plaintiff was absent from work from December 23, 1978 until June 4, 1979 because of illness (D. Ex. 2).

In April of 1979, a permanent opening occurred on the 3 p. m. to 11 p. m. shift for the position of crane operator. The position was "posted" by Joseph Cornick, a foreman in the Labor Department. Posting is a procedure by which notices of a job opening are placed on bulletin boards at several locations around the plant. For the period specified in the posting (normally five working days), employees can apply for the position by either signing the posting themselves or requesting that their foreman sign for them. The position is then awarded to the most senior qualified employee to sign the posting.[3] Cornick testified that Gerald Pakula was the only employee to sign the posting. Pakula began training for the position on April 25, 1979, and began drawing pay as a crane operator as of May 16, 1979.

On May 31, 1979, plaintiff returned to work for a medical examination and was

---

1. This action was tried on the following claims: (1) whether defendant Armco discriminatorily denied plaintiff Johnson a promotion to the position of Crane Operator, Labor Grade 5, on or about June 3, 1979 in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e *et seq.* ("Title VII"); (2) whether defendant Armco discriminated against plaintiff Johnson in violation of Title VII by entering his locker and removing his personal safety shoes on or about June 5, 1979; and (3) whether defendant Armco discriminated against plaintiff Johnson in violation of Title VII by suspending him for one day on March 18, 1980 for leaving his work station without permission and for removing Company property from the bulletin board (Supplement to Proposed Joint Pretrial Order, filed February 4, 1982). Defendant orally moved to involuntarily dismiss each of plaintiff's claims at the conclusion of plaintiff's case-in-chief. This Court orally granted defendant's motion to dismiss as to claims two and three and denied that motion as to plaintiff's first claim. Since plaintiff's allegation that he was denied the position of crane operator in violation of Title VII is the only claim that remains open, it is unnecessary to recite the testimony and documentary evidence presented by the parties on plaintiff's other claims, except as it relates to the issue of the presence or absence of a discriminatory motive in the decision to deny plaintiff a promotion to crane operator.

2. That department was alternatively referred to by plaintiff as the Labor Department and the Maintenance Department. Joseph Cornick, a foreman in the Labor Department, testified that the Labor Department is a shop in the Maintenance Department.

3. The collective bargaining agreement in force at the time provided, in pertinent part:

   [T]he following factors as listed below shall be considered [in promotion decisions]; however, only where factors "13.111" and "13.112" are relatively equal shall length of continuous service be the determining factor:
   13.111 Ability to perform the work,
   13.112 Physical fitness,
   13.113 Continuous service.
   (D. Ex. 73).

cleared by the company physician to return to work on June 4, 1979, on the 7 a. m. to 3 p. m. shift. John A. Campbell, who was then superintendent of the Maintenance Department, told plaintiff after he completed work on June 4, that because of his lack of seniority he would be reassigned to the 11 p. m. to 7 a. m. shift, as a scale crew worker. Johnson complained that he was incapable of performing scale crew work because of medical problems.[4] Nevertheless, he returned that evening at 11 p. m. to begin working on the scale crew. He testified that after working for two hours, the heat bothered his feet so much that he was forced to leave. He did not return to work until July, at which time he was assigned to work as a janitor in Custodial Services.

### Applicable Law

Plaintiff has proceeded under a theory of disparate treatment. Disparate treatment, in the context of this case, covers a situation in which an employer treats a black employee less favorably than white employees on account of his race. *See International Brotherhood of Teamsters v. United States,* 431 U.S. 324, 335, n.15, 97 S.Ct. 1843, 1854, n.15, 52 L.Ed.2d 396 (1977). Discriminatory motives must be proved, although those motives may be inferred. *E.g., Wright v. National Archives & Records Serv.,* 609 F.2d 702, 713 (4th Cir. 1979). Recent Supreme Court cases, beginning with *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), have established a system of presumptions and shifting burdens of production for demonstrating discriminatory motive, *Wright,* 609 F.2d at 713. Plaintiff must first establish a prima facie case by showing "(i) that he belongs to a racial minority; (ii) that he applied and was qualified for a job for which the employer was seeking applicants; (iii) that, despite his qualifications, he was rejected; and (iv) that, after his rejection, the position remained open and the employer continued to seek applications from persons of complain-

ant's qualifications." *Id.* at 802. When a plaintiff fails in his initial attempt to prove a prima facie case, the court need inquire no further and defendant need not articulate any reasons for its actions. *Taylor v. Amaturo Group, Inc.,* 518 F.Supp. 1331, 1335 (E.D.Mo.1981).

When a plaintiff satisfies his burden of establishing a prima facie case of employment discrimination, the burden of production then shifts to the employer. It must "articulate some legitimate, nondiscriminatory reason" for the personnel action. *Texas Dept. of Community Affairs v. Burdine,* 450 U.S. 248, 253, 101 S.Ct. 1089, 1093, 67 L.Ed.2d 207 (1981). It meets its burden of production if it produces evidence sufficient to raise an issue of fact as to whether it discriminated against the plaintiff. *Id.* at 254–55, 101 S.Ct. at 1094. The burden of production then shifts back to the plaintiff to show that the reasons offered are not the true reasons, that they are only a pretext, and merges with the burden of persuasion. *Id.* at 253–256, 101 S.Ct. at 1093–1095.

### Plaintiff's Prima Facie Case

It is undisputed that plaintiff belongs to a racial minority and that the position of crane operator on the 3 p. m. to 11 p. m. shift was awarded to Gerald Pakula, a white man with less seniority than plaintiff. Defendant contends, however, that plaintiff has failed to meet his burden of proving that he applied for and was qualified for the position of crane operator.

Plaintiff concedes that he did not apply for the crane operator position when it was posted in April 1979. He alleges, however, that he applied for the position on June 4, 1979, the day he returned to work from his extended sick leave and learned that the job had been awarded to Pakula. He testified that he first spoke to his foreman, Ed Wojnowski, about the scale crew position to which he had been assigned and about the

---

**4.** Johnson also testified that during the course of his conversation with Campbell, he applied for the crane operator position awarded to Pa-

kula. Defendant contends that the crane operator position was not mentioned. See discussion *infra.*

crane operator position. He alleges that he then spoke with John Campbell in the presence of Dave Grams, his union representative. He stated that when he asked for the crane operator position, Campbell replied that if he did not work on the scale crew, plaintiff would have no job at Armco. He further testified that later that day, or the following day, he related his conversation with Campbell to Darrell Butler, the Human Relations Advisor in the Personnel Department at Armco, and that he told Butler that he felt he had a right to the crane operator job or to be trained for the job.

Plaintiff was unable to present any reliable evidence to corroborate his testimony that he discussed the crane operator's position with any Armco officials to whom he claims to have voiced his complaints.[5] In contrast, Wojnowski, Campbell and Butler each testified that plaintiff did not express to them his desire to be awarded the crane operator's position. Moreover, their version of the disputed conversations is more consistent with the testimony of other witnesses as supported by the documentary evidence introduced at trial. Dave Grams, the union official who was present at the June 4, 1979 conversation between plaintiff and Campbell, testified that plaintiff told Campbell that he wanted to be assigned to a job other than on the scale crew, but stated that he, Grams, did not know what job plaintiff wanted. He did not testify that plaintiff asked for the crane operator position. Edward Shives, the union official who filed a grievance for plaintiff in July 1979, testified that plaintiff did not raise the issue of promotion to crane operator in the grievance proceedings until the third step of those proceedings in October of 1979. His uncontroverted testimony is corroborated by the Statement of Grievance dated July 23, 1979, and signed by both plaintiff and Shives (D. Ex. 24), and the statement of positions submitted by union and management on October 2, 1979 as part of the grievance record following the second step of the grievance procedure. (D. Ex. 25). Neither document mentions the crane operator position despite alleging other specific acts of discrimination arising out of the same sequence of events. The apparent failure of plaintiff to formally raise the promotion issue casts considerable doubt on plaintiff's testimony that as soon as he returned from sick leave he applied for the position and complained to company officials about not being permitted an opportunity to claim the position.

This Court finds more credible the testimony of Campbell, Wojnowski and Butler that plaintiff did not speak to them about the crane operator position, and finds as a fact that plaintiff did not apply for that opening in June of 1979. Accordingly, the Court concludes that plaintiff has failed to establish a prima facie case of employment discrimination. It is, therefore, unnecessary to rule on defendant's contentions that plaintiff was not physically capable of performing the job of crane operator, and that he was precluded by established company policy from consideration for that job because he had been placed on medical restrictions by the company physician.[6]

5. Edward Cihlir, a co-worker of plaintiff, testified that he thought plaintiff expressed an interest in the crane operator position. However, it was unclear from his testimony when plaintiff allegedly expressed such an interest or to whom that interest was expressed. It is clear that plaintiff would fail to meet his burden of proving that he applied for the crane operator position if he merely complained to co-workers about not being awarded the job. Significantly, Cihlir did not state that plaintiff expressed his interest in the position to Campbell, Wojnowski, Butler or any other management personnel at Armco.

6. Although not distinguished by the parties as such, the Court believes that the evidence presented concerning plaintiff's medical condition presented two distinct issues. Even assuming plaintiff was able to establish a prima facie case by establishing that he was physically capable of performing the job of crane operator, the first issue, defendant could still rebut that showing by producing evidence that plaintiff would have been denied the position of crane operator because he had been placed on medical restrictions. Assuming defendant could produce evidence that in so doing it would have been acting on a neutral basis, plaintiff would then have to demonstrate that that basis was pretextual; for example, by showing that the asserted neutral basis was so ridden with error that defendant could not hon-

Even if the Court were to find that plaintiff did apply for the job of crane operator on June 4, 1979, it holds that the application was untimely. The collective bargaining agreement in force at the time (D. Ex. 73) did not expressly cover the situation presented by an employee who returns from sick leave and claims a job awarded during his absence to a less senior employee. Plaintiff testified that in that instance the returning employee has the right to displace or "bump" the less senior employee. He offered no evidence to support that assertion. Several of defendant's witnesses testified that it was company policy that an employee returning from sick leave could not bump a junior employee who was awarded the position in the senior employee's absence. (Testimony of Butler, Cornick, Macklin, Ward and Wojnowski). In particular, Butler, whose duties at Armco include interpreting the collective bargaining agreement and counseling management as to how it is to be employed, explained that the union had wanted to include a provision in the collective bargaining agreement whereby an employee on sick leave could obtain positions posted and awarded during his absence. However, management had vigorously resisted that policy. He testified that management had agreed as a compromise to install a telephone call-in system whereby employees could learn of plant-wide job openings that were posted while they were absent from work. Clarence Ward, the foreman for Custodial Services, also testified that Armco has a telephone hot line for employees on sick leave to call in and find out if there are any openings. Indeed, plaintiff's own witness, Edward Shives, a union official presumably familiar with promotion policies and bumping rights, agreed that a senior employee could not bump a junior employee who had been awarded a claimed position during his absence.

The clear weight of the evidence shows, and the Court finds as a fact, that it was the policy at Armco that an employee who returns from sick leave cannot successfully claim a job awarded during his absence to a less senior employee. Therefore, even if plaintiff applied for the position of crane operator on June 4, 1979, that application was untimely. Accordingly, the Court holds that plaintiff failed to demonstrate a prima facie case of employment discrimination.[7]

### Company's Evidence of Nondisparate Treatment and Plaintiff's Evidence of Pretext

■ Alternatively, to the extent that the burden of producing evidence that a plaintiff has made a *timely* application for a position is not an element of plaintiff's prima facie case, the Court holds that defendant has rebutted plaintiff's prima facie case by articulating a legitimate nondiscriminatory reason for denying plaintiff the promotion—his failure to apply for the job before it was permanently awarded to another employee.[8] The Court further finds that

estly have relied upon it. *Lieberman v. Gant,* 630 F.2d 60 (2d Cir. 1981).

7. Plaintiff also alleged that it takes three to six months to train a person for the position of crane operator, in reliance upon a 1947 Armco Steel Corporation job description for the position of a craneman (D. Ex. 41). On the basis of that document, he argued that Armco deliberately trained Pakula in an abnormally short period of time, thus preventing plaintiff from claiming or being awarded that position after his return from sick leave. That contention is not supported by the weight of the evidence. Campbell testified that the old job description notwithstanding, it should take four to six weeks to train an employee for that position. Cornick testified that two to four weeks is normal, and that he has never known it to take longer than four weeks. The Court finds nothing unusual or sinister in the decision to award Pakula the position of crane operator on or about May 16, 1979 after only three weeks of training, and specifically rejects Johnson's contention that the decision to train Pakula for three weeks only was discriminatorily motivated.

8. Arguably, any analysis along these lines is somewhat artificial and speculative. Since defendant argued, and the Court holds that plaintiff never applied for the job, in a sense defendant was never presented with an opportunity to and never did "articulate" a reason for denying him the promotion. However, since the burden at all times remains with the plaintiff to prove a discriminatory motive for defendant's ac-

plaintiff failed to satisfy his burden of proving that the assertedly neutral basis for denying him the promotion was pretextual and that defendant was, in fact, motivated by racial animus in not promoting plaintiff.

Plaintiff alleged that defendant engaged in a continual pattern of harassment against him and other black employees, and argued that that pattern of conduct supports plaintiff's theory that defendant acted with a discriminatory motive when it denied him the crane operator position.

When closely scrutinized, however, the evidence presented by plaintiff does not demonstrate a pattern of discriminatory treatment of black employees by Armco. For example, plaintiff complained that his locker was entered into and a pair of work shoes were removed from it without his permission, and presented testimony about another incident in which management searched the lockers of a group of employees; however, one of his witnesses stated that three-fourths of the lockers searched on that occasion were the lockers of white employees. (Testimony of Charles Sharp). Plaintiff also argued in his post-trial memorandum that defendant conspired with the company doctor to have plaintiff certified as eligible only for limited duty so as to preclude him from claiming the crane operator position. Aside from the fact that plaintiff presented no credible evidence tending to prove the existence of any such conspiracy, one of plaintiff's own witnesses, a white employee, testified that he was denied a position of crane operator also because of medical restrictions. (Testimony of Leonard Keene). Plaintiff alleged that the reason he was assigned to Custodial Services was because Armco had a policy of assigning blacks to dead end jobs, yet he offered no evidence to substantiate that charge or to rebut defendant's allegation that the majority of the janitors at Armco are white.

Finally, he testified about being unfairly suspended on three occasions for allegedly not reporting to work when directed to do so, for leaving his work area without permission, and for unauthorized possession of company property, yet he did not allege that white employees had been accused of the same or similar conduct and had been treated differently, or present any other evidence to support an inference that he was being harassed on those occasions because he is black. Indeed, the person whom plaintiff appears to have had the most problems with at Armco was his foreman in Custodial Services, Mr. Clarence Ward, who himself is black. None of the incidents testified to by plaintiff or his witnesses establishes that any of defendant's actions were discriminatorily motivated.

### Conclusion

The Court expresses no opinion as to the wisdom or soundness of the practices and procedures employed by Armco officials of which plaintiff complains, such as the policy of not allowing employees to apply for jobs after they have been awarded to junior employees, or the policy of refusing to allow employees on medical restrictions to apply for certain jobs, or the practice of going into employees' lockers without their permission. Defendant does not have the burden of proving that its challenged policies or actions are sound; rather the burden falls on the plaintiff to prove that they are pretextual. *Lieberman v. Gant*, 630 F.2d 60 (2d Cir. 1980). Plaintiff has failed to show that defendant acted on other than a neutral basis.

Assuming, *arguendo*, that plaintiff has been treated unfairly by Armco, there is no credible evidence tending to establish that he has been discriminated against because he is black. Accordingly, judgment will be entered in favor of defendant.

tions, it is relevant to that issue to inquire whether an objective facially neutral company policy would disqualify the plaintiff from claiming that position.