# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 98-1715

_____

William F. Allen; Richard M. Baker;                    *
Calvin Ballew; Danial Bennett;                         *
George W. Earle; Jimmy R. Edom;                        *
Carl L. Fitzhugh; Steve Holman;                        *
Charles W. Huitt; William H. Igou;                     *
Gerald Jeffery; Floyd L. Keene;                        *
Gayle King; Joel B. Sanford;                           *
Tony Sparks; Freddy Sullivant;                         *
Jerry D. Thompson; Larry W.                            *
Thompson; Robert G. Woolf;                             *
Virgil Collins; Jerry Huffman;                         *
Larry Layne; James Nolan;                              *
Don Clements,                                          *
                                                       *   Appeal from the United States
            Plaintiffs - Appellants,                   *   District Court for the
                                                       *   Eastern District of Arkansas.
Donald R. Glasgow; Francis M.                          *
Shead; William S. Baldwin;                             *
Wayne Henson; Kathleen Reynolds,                       *
                                                       *
            Plaintiffs,                                *
                                                       *
       v.                                              *
                                                       *
Entergy Corporation, Inc.; Entergy                     *
Services, Inc.; Entergy Arkansas, Inc.,                *
formerly known as Arkansas Power &                     *
Light Company,                                         *
                                                       *
            Defendants - Appellees.                    *

_____

Submitted: June 16, 1999
Filed: October 8, 1999
_____

Before BOWMAN and HEANEY, Circuit Judges, and LONGSTAFF,[1] District Judge.
_____

BOWMAN, Circuit Judge.

Former employees of Entergy Corporation, Inc. sued Entergy and its subsidiaries for age discrimination on theories of disparate impact and disparate treatment. The case was tried to a jury for eighteen days, and after six days of deliberation the jury returned verdicts for Entergy on all the disparate-impact claims and on all but five of the disparate-treatment claims.[2] Those plaintiffs who did not prevail appeal, and we affirm.

Responding to anticipated deregulation and competition in the electric utility industry, Entergy developed an evaluation system that ranked employees in comparison to one another. Entergy's prior evaluation system did not rate employees in relation to other employees, and it had produced too many high evaluations, resulting in most employees' evaluation scores being grouped in the same small range. Under the new evaluation system, immediate supervisors ranked the performance (i.e., current job performance) and the potential (i.e., potential to advance or assume greater responsibility) of each employee within their supervision. Employees within a peer group then were listed from best to worst as to performance and from best to worst as to potential. From these lists, employees were placed on a matrix that reflected their

_____

[1]The Honorable Ronald E. Longstaff, Chief Judge, United States District Court for the Southern District of Iowa, sitting by designation.

[2]Entergy is not appealing the five judgments entered against it.

relative performance and potential, producing a ranking number for each employee. These results were progressively "rolled-up" through the company to compare employees to their peers company-wide. Each of the appellants received a low ranking despite satisfactory to excellent evaluations for the previous three years under the old evaluation system. Entergy conducted a preliminary adverse-impact analysis that determined the ranking system had an adverse impact on the basis of age, but no further analysis was performed.

In a parallel process, Entergy implemented a plan to reorganize its Independence and White Bluff coal-fired generating plants. The appellants were discharged pursuant to the subsequent reduction in work force at these plants. The managers of the two plants placed employees into the positions created by the reorganization after considering various factors, including the ranking numbers created by the new evaluation system. The appellants' disparate-impact claims were based on the use of the ranking system to select employees to fill the reorganized positions. The appellants argued that the ranking system adversely affected older employees and that their low individual rankings caused them not to be selected for positions.

The disparate-impact claims were submitted to the jury on interrogatories. The jury found that Entergy had used a selection procedure that had an adverse impact on employees age forty or older and that each appellant was discharged through use of the ranking system. The jury, however, found that Entergy had a business justification for using the ranking system and that the appellants had not proved the availability of an equally effective selection system having less adverse impact upon older employees.

The appellants argue that the District Court[3] erred in instructing the jury on disparate impact, in denying its motions for judgment as a matter of law on the disparate-impact claims, and in making certain evidentiary rulings.

The appellants argue that the District Court erroneously instructed the jury in accordance with <u>Wards Cove Packing Co. v. Atonio</u>, 490 U.S. 642 (1989). Pointing out that <u>Wards Cove</u>, a Title VII case, was overturned by a provision of the 1991 Civil Rights Act amending Title VII, <u>see</u> 42 U.S.C. § 2000e-2(k)(1)(A)(i) (1994), the appellants argue that the pre-<u>Wards Cove</u> approach to Title VII disparate-impact cases should be followed by analogy in disparate-impact cases under the Age Discrimination in Employment Act (ADEA), 29 U.S.C. §§ 621-634 (1994). Prior to <u>Wards Cove</u>, the employer had the burden of proving that the challenged evaluation system or other business practice was a business necessity by showing it was related to job performance. <u>See</u>, <u>e.g.</u>, <u>Albemarle Paper Co. v. Moody</u>, 422 U.S. 405, 425 (1975) (stating that the employer has the "burden of proving that its tests are 'job related'"); <u>Griggs v. Duke Power Co.</u>, 401 U.S. 424, 431 (1971) ("The touchstone is business necessity. If an employment practice . . . cannot be shown to be related to job performance, the practice is prohibited."). Lessening this burden, <u>Wards Cove</u> required the employer only to bear the burden of producing evidence of a business justification for the challenged employment practice. <u>See Wards Cove</u>, 490 U.S. at 659 (stating that the challenged practice must significantly serve the employer's legitimate employment goals but it is not required to be essential or indispensable). The 1991 Civil Rights Act overturned <u>Wards Cove</u> and again placed the burden on the employer "to demonstrate that the challenged practice is job related . . . and consistent with business necessity."[4]

---

[3]The Honorable James M. Moody, United States District Judge for the Eastern District of Arkansas.

[4]If the employer meets its burden, whether the standard is to prove business necessity or to show business justification, the burden then shifts to "the complaining party to show that other tests or selection devices, without a similarly undesirable

29 U.S.C. § 2000e-2(k)(1)(A)(i).  The appellants argue that, contrary to <u>Wards Cove</u>, Entergy should have had to bear the burden of proving a business necessity for using the ranking system rather than merely showing a business justification, which the appellants then had to disprove.

Entergy contends that the appellants did not properly preserve this claim of instructional error.  We agree.  "[T]o preserve an argument concerning a jury instruction for appellate review, a party must state distinctly the matter objected to and the grounds for the objection on the record."  <u>Cross v. Cleaver</u>, 142 F.3d 1059, 1068 (8th Cir. 1998) (quoting <u>Dupre v. Fru-Con Eng'g, Inc.</u>, 112 F.3d 329, 334 (8th Cir. 1997)); <u>see also</u> Fed. R. Civ. P. 51.  The objection must be specific and "bring into focus the precise nature of the alleged error" so that the district court may have the opportunity to "correct errors and avoid the need for a new trial."  <u>Westcott v. Crinklaw</u>, 133 F.3d 658, 662 (8th Cir. 1998) (internal quotation omitted).  "Even tendering an alternative instruction without objecting to some specific error in the trial court's charge or explaining why the proffered instruction more accurately states the law does not preserve the error for appeal."  <u>Id.</u>

After the District Court asked the appellants for their objections to the instructions, the following discussion occurred.

> [ATTORNEY FOR PLAINTIFFS]: Instruction No. 10, we would object
> to the placing of the burden of proof on the plaintiffs to what we believe
> are still affirmative defenses of the defendants.  Under the Age
> Discrimination Act the defendants have the burden of proving reasonable

---

[impact on older workers], would also serve the employer's legitimate [business] interest[s]."  <u>Albemarle</u>, 422 U.S. at 425; <u>see</u> <u>also</u> <u>Wards Cove</u>, 490 U.S. at 660.  This burden consistently has been placed on plaintiffs in Title VII cases and, indeed, the 1991 Civil Rights Act continues to place this burden on plaintiffs.  <u>See</u> 42 U.S.C. § 2000e-2(k)(1)(A)(ii).

factors other than age as an affirmative defense and we would – they also have – we also think that they have the burden of proving why they did not use the alternative. We would like to proffer an alternative instruction under <u>Albemarle Paper Company v. Moody</u>.

THE COURT:  I think we are down to Proffered Instruction J.

All right, I'm going to refuse the Plaintiffs' Proffered Instruction J and overrule the objection to the Court's Instruction No. 10.  From my reading of the Eighth Circuit case law, which has not made a definitive ruling on who has the burden of proof on the issue of the reasonable alternative, my analysis of the law is that it would be unfair to place that burden on the defendants until case law or statutory law has made it clear that there is a burden on the defendants to establish a reasonable alternative.  And, therefore, the burden should be on the plaintiffs on this issue and that's the way the instruction reads to the jury.

Trial Tr. at 73-74 (Apr. 24, 1997).  From the objection and the District Court's response, it is clear that all the appellants conveyed to the District Court was their objection as to the burden of proof on reasonable alternatives.  The appellants argue that they objected to the burden of proof both as to reasonable alternatives and as to business necessity.  They may have intended such an objection, but if so they utterly failed to state it distinctly so as to bring the nature of their objection into focus for the court.  To preserve the alleged error for appeal, the appellants were required, during the jury instruction conference, to make a specific objection that distinctly stated the matter objected to and the grounds for the objection.  The appellants' objection did not use the terms "business necessity" or "business justification."  Even assuming the appellants' objection is sufficiently general to encompass both reasonable alternatives and business necessity, a "general objection [is] insufficient to preserve the specific objections to the instruction" that appellants now argue.  <u>Dupre</u>, 112 F.3d at 333.  Nowhere in their objection did the appellants specify the grounds for the objection they now urge as a basis for reversal.  After hearing the District Court's response, the appellants easily could have made clear that they also were objecting to the burden of

proof as to business necessity on the ground that the 1991 Civil Rights Act overturned Wards Cove's business-justification analysis, but they failed to do so.

Because the appellants failed to make a timely and adequate objection regarding the business necessity issue, this Court reviews only for plain error. See Westcott, 133 F.3d at 662. The appellants must show that instructing in accordance with Wards Cove was an "error affecting substantial rights," that the error was "plain," and that the error seriously affected "the fairness, integrity or public reputation of judicial proceedings." Caviness v. Nucor-Yamato Steel Co., 105 F.3d 1216, 1220 (8th Cir. 1997) (internal quotations omitted); see also United States v. Olano, 507 U.S. 725, 732 (1993) ("There must be an 'error' that is 'plain' and that 'affect[s] substantial rights.'"). The error here, if there was one, was certainly not "plain."

The 1991 Civil Rights Act expressly amended Title VII to overrule the Wards Cove analysis. The Act, however, does not prescribe a departure from Wards Cove for purposes of the ADEA, even though other ADEA provisions were amended by the Act. Neither the Supreme Court nor our Circuit has addressed the question of the status of Wards Cove in ADEA cases after the 1991 Civil Rights Act.[5] The District Court

---

[5]We note that the Supreme Court has "never decided whether a disparate impact theory of liability is available under the ADEA," Hazen Paper Co. v. Biggins, 507 U.S. 604, 610 (1993), but it has suggested that the ADEA does not permit such actions. See id. ("Disparate treatment . . . captures the essence of what Congress sought to prohibit in the ADEA."); see id. at 611 ("When the employer's decision is wholly motivated by factors other than age, the problem of inaccurate and stigmatizing stereotypes disappears."). In a concurring opinion to Hazen, three justices note that "there are substantial arguments that it is improper to carry over disparate impact analysis from Title VII to the ADEA." Id. at 618 (Kennedy, J., concurring). Our Circuit, however, has not expressly analyzed the application of the disparate impact theory to ADEA cases since Hazen Paper was decided. In Smith v. City of Des Moines, Iowa, 99 F.3d 1466, 1470 (8th Cir. 1996), we concluded that disparate impact claims are cognizable under the ADEA by relying on three of our prior opinions, which we took to be the law

therefore could have chosen, as it did, to follow <u>Wards Cove</u> because the 1991 Civil Rights Act did not state that <u>Wards Cove</u> was overruled in the ADEA context. Alternatively, the District Court could have chosen not to apply <u>Wards Cove</u> by reasoning that the current statement of Title VII disparate-impact analysis, as reflected in the 1991 Civil Rights Act, should apply. As already mentioned, this issue is not settled in our Circuit. It also is a matter on which reasonable jurists could disagree. The error here, if any, cannot be regarded as plain error, and thus it affords the appellants no basis for reversal of the District Court.

As a second basis for reversal, the appellants argue that they should have been granted judgment as a matter of law on two grounds. First, the appellants argue the District Court erred by failing to rule that Entergy had not proven that use of the ranking system was a business necessity. This argument merely restates the appellants' instructional argument regarding business necessity, which we already have addressed. Second, the appellants argue the District Court erred by failing to rule that Entergy had other selection devices, without a similar adverse impact on older employees, which would have served Entergy's legitimate interests. The jury specifically found against the appellants on this matter, <u>see</u> Special Verdict Form No. 27 at 4, and we find no basis for reversing the jury's verdict, which is one that on this record a reasonable jury could reach.

The appellants also argue the District Court erred by excluding certain evidence. We will not reverse a district court's rulings on admissibility of evidence "absent a clear

---

of the Circuit. <u>See</u> <u>also</u> <u>Lewis v. Aerospace Community Credit Union</u>, 114 F.3d 745, 750 (8th Cir. 1997) (citing <u>Smith</u> for proposition that our Circuit continues to recognize such claims), <u>cert. denied</u>, 118 S. Ct. 1392 (1998). Two of the cases relied upon pre-dated <u>Hazen Paper</u> and in the third case, in which our opinion post-dates <u>Hazen Paper</u>, the jury verdict was rendered more than one year prior to <u>Hazen Paper</u> and our opinion makes no mention of the <u>Hazen Paper</u> analysis. <u>See</u> <u>Houghton v. Sipco, Inc.</u>, 828 F. Supp. 631, 634 (S.D. Iowa 1993), <u>rev'd in part</u>, 38 F.3d 953 (8th Cir. 1994).

and prejudicial abuse of discretion." Pittman v. Frazer, 129 F.3d 983, 989 (8th Cir. 1997). Having reviewed the record, we find no abuse of discretion warranting reversal.

The judgment of the District Court is affirmed.

HEANEY, Circuit Judge, dissenting.

A careful reading of the record convinces me that appellants properly preserved their claim of instructional error. They sufficiently objected to the district court's ADEA disparate-impact instruction, which applied the "business justification" standard articulated in Wards Cove Packing Co. v. Antonio, 490 U.S. 642 (1989); and they proffered an alternative instruction applying the pre-Wards Cove "business necessity" standard. Because the instructional error claim was preserved, I review the issue presented on the merits. I conclude that the Civil Rights Act of 1991, 42 U.S.C. § 2000e-2(k) (1994), overruled Wards Cove as applied to ADEA disparate-impact claims and that appellants' instruction was the correct statement of the law. In light of its incorrect jury instruction, the district court should be reversed and the matter remanded for a new trial.

I.

The majority incorrectly concludes that appellants' instructional error claim is procedurally barred. To preserve a claim of instructional error, the appealing party must state distinctly: (1) the matter objected to, and (2) the grounds for the objection. See Cross v. Cleaver, 142 F.3d 1059, 1068 (8th Cir. 1998) (quoting Dupre v. Fru-Con Eng'g, Inc., 112 F.3d 329, 334 (8th Cir. 1997); see also Fed. R. Civ. P. 51 ("[N]o party may assign as error the giving or the failure to give an instruction unless that party objects thereto before the jury retires to consider its verdict, stating distinctly the matter objected to and the grounds for the objection."). Appellants in this case did both.

During the instructional conference, appellants objected to Instruction No. 10, the court's ADEA disparate-impact jury instruction, which applied the <u>Wards Cove</u> "business justification" analysis.   The court's instruction read:

> Plaintiffs must prove that the application of a specific employment practice or procedure, while neutral on its face, caused a disparate impact on employees over 40 years old.
>
> If plaintiffs demonstrate that a specific employment practice or procedure caused such a disparate impact, defendants must articulate a *business justification* for the use of such procedure.  However, defendants need not persuade you that the justification exists.  Rather, *plaintiffs have the ultimate burden of proving the absence of a business justification*, such that the use of the challenged procedure violated the Age Discrimination in Employment Act.
>
> In deciding whether defendants had a business justification, you should consider whether the challenged procedure served, in a significant way, defendants' legitimate employment goals.   An insubstantial justification in this regard is not sufficient; however, it is not necessary that the challenged procedure was "essential" or "indispensable" to the defendants' business.
>
> Plaintiffs may also seek to prove that defendants were using the challenged procedure merely as a "pretext" for discrimination.  In order to prove such a pretext, plaintiffs must prove that other procedures, without a similarly undesirable age discriminatory effect, would equally have served the defendants' legitimate business interests.  In determining whether an alternative would have been suitable in equally serving the defendants' legitimate business interests, you should consider such factors as the cost of using the proposed alternative or other burdens associated with using the proposed alternative.

(Appellants' App. at 23-24 (emphasis added).)

In response to the court's instruction, appellants objected stating:

-10-

Instruction No. 10, we would object to the placing of the burden of proof on the plaintiffs to what we believe are still *affirmative defenses* of the defendants. Under the Age Discrimination Act the defendants have the burden of proving reasonable factors other than age as an affirmative defense and we would – they also have – we also think that they have the burden of proving why they did not use the *alternative*.

(Tr. of Apr. 24, 1997, at 73-74 (emphasis added).)

Appellants then proffered alternative Instruction J, which applied the pre-<u>Wards Cove</u> "business necessity" standard and read in part:

Your verdict will be for plaintiffs, if the plaintiffs proved the following facts are more likely true than not true:

First, defendant has an employment policy or procedure, the ranking system, which may appear to be neutral on its face, but which actually results in employees 40 years of age or older being terminated at a substantially higher rate than employees under 40; (the plaintiff need not show that the employer was motivated by a discriminatory intent); and

Second, that plaintiffs were among the group who were terminated as a result of the application of this employment policy or procedure.

If the plaintiffs have failed to prove either one of these facts, then you will find for the defendant.

If you find that plaintiffs have proved these facts, then you will find for plaintiffs, unless defendant has *proved* that the policy or procedure is justified by a *business necessity* unrelated to age. A policy or procedure is justified by a business necessity if it is of substantial importance to the legitimate needs of defendant's business and is necessary to achieve those needs.

A policy or procedure is not necessary to achieve defendant's legitimate business needs if an *alternative policy* would serve those same needs while having a lesser impact on employees 40 years of age or older.

(Appellants' App. at 25 (emphasis added).)

-11-

The court overruled appellants' objection and rejected their proffered instruction. The court then ruled that the burden of proving reasonable alternatives should be on the plaintiffs. (Tr. of Apr. 24, 1997, at 74.)

The majority first concludes that appellants' instructional error claim is procedurally barred because appellants objected only to bearing the burden of proving the absence of reasonable alternatives. According to the majority, appellants failed to object to the instruction's use of the Wards Cove "business justification" standard, as opposed to the pre-Wards Cove "business necessity" standard. The majority's reading of the record is unduly technical.

Appellants made not one, but two separate objections to the use of the "business justification" standard. First, appellants objected to the burden of proof on what they believed were affirmative defenses of the defendant. Under both the pre-Wards Cove and Wards Cove standards, once the plaintiff establishes a prima facie case of disparate impact, the defendant may raise an affirmative defense. Under the pre-Wards Cove standard, that defense is "business necessity." See Kirby v. Colony Furniture Co., 613 F.2d 696, 703 (1980) (citing Albemarle Paper Co. v. Moody, 422 U.S. 405, 425 (1975)). Under the Wards Cove standard, the defense is "business justification." See Wards Cove, 490 U.S. at 659.

However, the burdens for these two defenses are different. The pre-Wards Cove standard places both the burdens of production and persuasion on the defendant to prove that the challenged practice is justified by a "business necessity." See Kirby, 613 F.2d at 703. The Wards Cove standard, on the other hand, places only the burden of production on the defendant to articulate a "business justification" for the challenged practice. See Wards Cove, 490 U.S. at 659. The plaintiff bears the burden of persuading the jury that no justification exists. See id. It is clear then that by objecting to the burden of proving alternative defenses appellants objected to the use of the "business justification" standard.

-12-

Second, appellants objected to bearing the burden of proving reasonable alternatives. Like their "affirmative defenses" objection, appellants' "reasonable alternatives" objection goes to the heart of their instructional error claim. Under the pre-Wards Cove "business necessity" standard, the defendant bears the burden of proving that no reasonable alternatives to the challenged practice were available, see Kirby, 613 F.2d at 703, whereas the Wards Cove "business justification" standard places the burden of proving reasonable alternatives on the plaintiff, see Wards Cove, 490 U.S. at 659. Thus, by objecting to bearing the burden of proving reasonable alternatives, appellants specifically objected to the court's use of the Wards Cove "business justification" standard.

The majority next concludes that even assuming appellants' objection encompassed the use of the Wards Cove "business justification" standard, their claim is still barred because they failed to make clear that they objected on the ground that the 1991 Civil Rights Act overturned Wards Cove as applied to ADEA disparate-impact claims. Again, the majority's reading of the record is overly technical.

A common-sense reading of the record leads me to conclude that, at the time of appellant's objection, it was clear to all involved, including the district court, that appellants objected on the ground that Wards Cove was overruled by the 1991 Civil Rights Act.

In their briefs on defendants' motion for summary judgment, both appellants and appellees fully argued the issue of whether the 1991 Civil Rights Act overruled Wards Cove for ADEA disparate-impact claims. (See Def. Br. in Supp. Summ. J. at 26-29; Pl. Br. in Opp. Summ. J. at 44-47.) Furthermore, the district court considered the issue during trial and determined that the 1991 Civil Rights Act did not overrule Wards Cove for ADEA disparate-impact claims and that the Wards Cove "business justification" standard applied. (Tr. of Apr. 16, 1997, at 48-49.) The fact that the matter was briefed, argued, and decided by the court clearly indicates that at the time of the

objection all parties understood that appellants objected on the ground that the 1991 Civil Rights Act overruled Wards Cove for ADEA disparate-impact claims, and no further statement of the ground for the objection was necessary.

Finally, in its construction of the record, the majority fails to consider the policy behind the specific objection requirement. The purpose of the requirement is to "compel litigants to afford the trial court an opportunity to cure [a] defective instruction and to prevent litigants from ensuring a new trial in the event of an adverse verdict by covertly relying on the error." Dupre, 112 F.3d at 333 (quoting Missouri Pac. R.R. v. Star City Gravel Co., 592 F.2d 455, 459 (8th Cir. 1979)). Appellants provided the district court with this opportunity.

Again the matter was fully briefed by the parties, providing the court with the opportunity to weigh the arguments and decide upon the applicable standard. Further, at the instructional conference, appellants twice objected to the use of the Wards Cove "business justification" standard, giving the court another opportunity to determine the applicable standard and correctly instruct the jury. Because the district court was afforded adequate opportunity to cure its defective instruction, the policy behind the specific-objection requirement was served.

A common-sense reading of the record reveals that appellants sufficiently objected to the court's jury instruction applying the Wards Cove "business justification" standard, and that they did so on the ground that the 1991 Civil Rights Act overruled Wards Cove with regard to ADEA disparate-impact claims. Thus, appellants' instructional error claim was preserved.

-14-

## II.

Because appellants' instructional error claim was preserved, I reach the substantive issue presented: whether the Civil Rights Act of 1991 overruled Wards Cove as it applied to ADEA disparate-impact claims.

In 1967, Congress passed the ADEA. See 29 U.S.C. § 621-634 (1999). The ADEA was created in part from Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e-2000e-17, and its substantive provisions taken "in haec verba" from Title VII. See Lorillard v. Pons, 434 U.S. 575, 584 (1978). The ADEA reads:

> It shall be unlawful for an employer –
> (1) to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment because of such individual's age;
> (2) to limit, segregate, or classify his employees in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee, because of such individual's age; or
> (3) to reduce the wage rate of any employees in order to comply with this chapter.

29 U.S.C. § 623(a) (1999).

Similarly, Title VII reads:

> It shall be an unlawful employment practice for an employer –
> (1) to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin; or

-15-

> (2) to limit, segregate, or classify his employees or applicants for employment in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee, because of such individual's race, color, religion, sex, or national origin.

42 U.S.C. § 2000e-2 (1999).

In <u>Griggs v. Duke Power Co.</u>, 401 U.S. 424, 431 (1971), the Supreme Court construed Title VII to proscribe "not only overt discrimination but also practices that are fair in form, but discriminatory in operation." Thus disparate-impact claims were created from the language of Title VII to prohibit employment practices that appeared facially neutral, but that had a discriminatory impact when applied.

Given that the language of the ADEA was taken almost verbatim from Title VII, it is not surprising that courts soon began to recognize disparate-impact claims under the ADEA. <u>See, e.g.</u>, <u>Leftwich v. Harris-Stowe State College</u>, 702 F.2d 686, 690 (8th Cir. 1983); <u>Holt v. Gamewell Corp.</u>, 797 F.2d 36, 37 (1st Cir. 1986); <u>EEOC v. Borden's, Inc.</u>, 724 F.2d 1390, 1394-95 (9th Cir. 1984). It also is not surprising that courts applied the Title VII disparate-impact analysis to ADEA disparate-impact claims. <u>See id.</u>

In 1989, the Supreme Court altered the Title VII disparate-impact standard by significantly lessening the defendant's burden. The Court held that if the plaintiff established a prima facie case of disparate impact, only the burden of production shifted to the defendant to prove a "business justification," rather than "necessity," for the challenged practice. <u>See</u> <u>Wards Cove</u>, 490 U.S. at 659. The burden of persuasion remained with the plaintiff. <u>See id.</u>

Discontent with the Court's narrow construction of Title VII led Congress to pass the 1991 Civil Rights Act to overrule <u>Wards Cove</u>. <u>See</u> 137 Cong. Rec. S15,277

(1991) (statement of Sen. Danforth) ("[F]or nearly two years many of us have been attempting to put together a civil rights bill that would redress problems created by the Supreme Court of 1989, particularly a bill that would reinstate the Griggs decision and that would overrule the Wards Cove decision. This amendment would do that."). In its section-by-section analysis of the 1991 Civil Rights Act, the Senate stated that "the burden-of-proof issue that Wards Cove resolved in favor of the defendants is resolved by this Act in favor of plaintiffs," and that "Wards Cove is thereby overruled." See 137 Cong. Rec. S15,473 (1991). The Act's legislative history in the House of Representatives is virtually identical. See 137 Cong. Rec. H9526 (1991) (statement of Rep. Edwards) (noting that the purpose of the Civil Rights Act of 1991 is to "restore the allocation of the burden of proof and the concept of business necessity as enunciated in Griggs, and reject the contrary interpretations of the Wards Cove case").

The Act's legislative history clearly demonstrates that Congress intended that the 1991 Civil Rights Act overrule Wards Cove for Title VII disparate-impact claims. It is not clear from the language of the 1991 Civil Rights Act, however, whether it overruled Wards Cove for ADEA disparate-impact claims.

The 1991 Civil Rights Act mentions the ADEA and amends its statute-of-limitations provision and provisions directing the EEOC to provide notice to a claimant once the agency's internal investigation is concluded. See Civil Rights Act of 1991, Pub. L. No. 102-106, § 115, 105 Stat. 1071 (1991) (codified at 29 U.S.C. § 626(d)(1999)). The Act is silent on the standard for analysis of ADEA disparate-impact claims. Appellees argue that this silence demonstrates that Congress did not intend to overrule Wards Cove as it applied to the ADEA. (Appellee's Br. at 14.) I disagree.

First, the legislative history of the 1991 Civil Rights Act indicates that Congress intended that the Act overrule Wards Cove for ADEA disparate-impact claims. Congress stated that "remedial statutes, such as civil rights law, are to be broadly

construed." H.R. Rep. No. 102-40, pt. 2, at 34 (1991), reprinted in 1991 U.S.C.C.A.N. (105 Stat.) 727. The ADEA is a remedial statute intended to remedy age discrimination in employment. See Lorillard, 434 U.S. at 584. Thus, it is to be broadly construed. The Wards Cove "business justification" analysis is a far narrower standard than the pre-Wards Cove "business necessity" analysis. It makes ADEA disparate-impact claims more difficult to prove because the burden of persuasion remains with the plaintiff at all times. Because the pre-Wards Cove standard more broadly construes ADEA disparate-impact claims, Congress intended that the 1991 Civil Rights Act overrule Wards Cove as applied to Title VII and ADEA disparate-impact claims.

Second, the language of the ADEA does not specifically provide for disparate-impact claims. Such claims arise by analogy to Title VII using the same disparate-impact analysis. See Borden's, Inc., 724 F.2d at 1394-95; see generally Smith v. City of Des Moines, 99 F.3d 1466, 1470-71 (8th Cir. 1996). Given that the language of the ADEA and Title VII is virtually identical and that ADEA disparate-impact claims are carried over from Title VII, the same analysis should apply. If we allow disparate-impact causes of action by analogy to Title VII, then logic dictates we should use the same burdens of proof used under Title VII. Because Congress overruled Wards Cove for Title VII disparate-impact claims, so too did it overrule Wards Cove for ADEA claims.

III.

Because the pre-Wards Cove "business necessity" standard applies to ADEA disparate-impact claims, the district court erred by instructing the jury on the Wards Cove "business justification" standard. The court incorrectly placed the burden of persuasion on the plaintiffs at all times, leaving the defendant with only the burden of producing evidence justifying its use of the challenged ranking system. Because of its instructional error, the district court should be reversed and the matter remanded for a new trial.

A true copy.

Attest.

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.